UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSE RODRIGUEZ,<br><br>Defendant. | 4:22-40106-KES<br><br>ORDER ADOPTING REPORT & RECOMMENDATION AS AMENDED AND DENYING MOTION TO SUPPRESS |

Defendant, Jose Rodriguez, is charged with one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Docket 1. Rodriguez moves to suppress all evidence found on his person during an August 2, 2021, traffic stop and all subsequent evidence found on his motorcycle. Docket 33. Rodrigeuz argues that this evidence was gathered in violation of the Fourth Amendment because officers did not have reasonable suspicion for the search. *Id.*

The court referred Rodriguez's motion to Magistrate Judge Veronica Duffy under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Duffy recommended denying Rodriguez's motion to suppress. Docket 40 at 17. Rodriguez filed five objections to the Report and Recommendation. *See* Docket 53. After a de novo review of the Report and Recommendation and the record, the court adopts the Report and

Recommendation as modified below and denies Rodriguez's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

After a de novo review of the transcript of the evidentiary hearing and the exhibits received into evidence, the court makes the following factual findings:

On August 2, 2021, at approximately 3:54 p.m., Highway Patrolman Nathan Monger was stationed in Mitchell near the intersection of Ohlman Street and West Havens Avenue. Docket 39 at 9. Notably, August 2 was several days before the Sturgis Motorcycle Rally, which draws "hundreds of thousands" of people to Sturgis, South Dakota. *Id.* at 9, 49. In preparation for the rally,

Monger received briefings from a task force about motorcycle clubs. *Id.* at 49-50.

 Monger was traveling west on West Havens Avenue toward the intersection with South Ohlman when he noticed two motorcycles. *See* Exhibit 1 at 00:00-00:20; Exhibit 2; Docket 39 at 10-11, 14-15. The two motorcycles, driven by Rodriguez and an unknown individual, were stopped in the left-turn lane perpendicular to the flow of traffic. Exhibit 1 at 00:20-00:24. Monger noticed that the drivers of both motorcycles were wearing Hells Angels motorcycle jackets. Docket 39 at 11, 53. When the vehicles in front of the motorcycles began to advance, the motorcycles did not wait to follow the flow of traffic, but instead entered into the eastbound lane traveling west – that is, the wrong way – and then turned left from that eastbound lane. Exhibit 1 at 00:33-00:38. Although the motorcycles are briefly out of view of the dashboard camera while in the intersection, from the arc of their movement, they appear to have swung wide into the far right lane of South Ohlman when completing their turn. *Id.*

 Monger turned left onto South Ohlman, following the two motorcycles. *Id.* One of the motorcycles stayed in the far right lane and continued at the speed of traffic. *Id.* at 00:38-00:47. The other, driven by Rodriguez, accelerated away from Monger, visibly traveling much faster than the surrounding traffic. *Id.* at 00:47-00:56. Monger testified that he has training in estimating vehicle speed and that, based on that training, he estimated Rodriguez's speed to be 65-70

miles per hour. Docket 39 at 14. The speed limit on that stretch of road is 45 miles per hour. *Id.*

Monger increased his speed to pursue Rodriguez. Exhibit 1 at 00:35-00:47. Monger testified that he decided to disregard Rodriguez's companion and to follow Rodriguez. Docket 39 at 14. Monger decided to follow Rodriguez because he believed that Rodriguez was attempting to flee. *See id.* Monger testified that he believed Rodriguez was fleeing based on Rodriguez's speed and the fact that Rodriguez did not stay with his companion when the companion began to yield. *See id.*

Although the record does not clearly demonstrate when Monger activated his patrol lights, Monger appears to have activated them at some point in his pursuit of Rodriguez. *See* Exhibit 1 at 00:30-00:47. Rodriguez pulled to the side of the road and onto the onramp to I-90, where he stopped, facing the wrong direction. *Id.* at 1:15-1:21. Soon after, Highway Trooper Anderson can also be seen arriving at the scene of the stop, *see id.* Anderson did not testify at the evidentiary hearing in this matter. *See* Docket 39.

Monger exited his patrol vehicle and approached Rodriguez. Exhibit 1 at 1:21. There is no audio of the conversation because Monger's microphone was muted during the interaction. Monger testified that he assumed his mic was accidentally muted during the stop, and that such accidents occurred regularly due to the placement of the on/off button on the device. *See* Docket 39 at 17-18.

Rodriguez dismounted his motorcycle and stood beside it as Monger approached. Exhibit 1 at 1:47. Monger testified that he "made contact with [Rodriguez] and . . . started discussing the reason for the stop." Docket 39 at 15. As he did, Monger noticed a bulge in the front of Rodriguez's waistband. *Id.* Monger asked Rodriguez about the bulge, and Rodriguez told him that it was a knife. *Id.* at 16. Monger then took the knife without asking Rodriguez for permission and conducted a pat-down search looking for additional weapons. *Id.* Monger discovered a handgun in Rodriguez's waistband. *Id.* He ran the serial number of the handgun through a database and found out the handgun had been stolen. *Id.* Monger then placed Rodriguez under arrest. *Id.* at 17.

## DISCUSSION

Rodriguez raises four factual objections and two legal objections to the Report and Recommendation. *See* Docket 53. The court addresses first the factual and then the legal objections in turn.

### I. Factual Objections

"Congress has mandated that the district court give de novo review to those portions of a Magistrate's report and recommendation to which objections are made." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994) (citing 28 U.S.C. § 636(b)(1)). When a party objects to factual findings by the Magistrate Judge, Article III of the United States Constitution and § 636(b)(1) require de novo review by the district court. *Branch v. Martin*, 886 F.2d 1043, 1045-46 (8th Cir. 1989). The district court may not rely solely on the report and recommendation in making this review. *Id.* at 1046. Instead, "[i]n

conducting de novo review, the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." *United States v. Harvey*, 38 Fed.Appx. 348, 350 (8th Cir. 2002) (cleaned up) (citing *Branch*, 886 F.2d at 1046). In ruling on Rodriguez's factual objections, the court reviewed the transcript of the evidentiary hearing, as well as all exhibits submitted by the parties.

### A. Objection 1: That Rodriguez was Speeding Prior to the Traffic Stop

Rodriguez objects to the Report and Recommendations' finding that he was speeding prior to the traffic stop. Docket 53 at 2. Rodriguez argues that Monger's testimony was not reliable, because it was merely a visual estimate that can be affected by acceleration. *Id.* Rodriguez also points out that "if traffic is coming from a stoplight, it may be traveling slower than the speed limit, and that motorcycles are able to accelerate more quickly than other types of vehicles." *Id.*

Having independently reviewed the footage of Rodriguez driving immediately prior to the traffic stop, the court makes an independent finding that Rodriguez was speeding. *See* Exhibit 1 at 00:47-00:56. Rodriguez is traveling much faster than the cars around him. *Id.* He accelerates quickly and greatly surpasses the speed of the surrounding traffic. *Id.* Thus, Rodriguez's first factual objection is overruled.

### B. Objection 2: That Rodriguez made a Turn into the Incorrect Lane (A "Wide Left Turn")

Rodriguez next objects to the finding that he made a "wide left turn" into the incorrect lane. Docket 53 at 2. He "believes that he appears to be off of the screen" when he actually completes the turn. *Id.* Further, Rodriguez argues that Monger's testimony about the turn is not reliable because the turn is not mentioned in Monger's report and Monger testified that he would have recorded all reasons for the stop in his report. *Id.*

The court, however, has reviewed the video evidence in this matter and finds it supports Monger's testimony that Rodriguez made a wide turn. *See* Exhibit 1 at 00:35-00:38. Rodriguez begins the turn perpendicular to the flow of traffic in the left-turn lane. *Id.* at 00:30. He then uses the oncoming traffic lane to pass the cars waiting to turn left and to negotiate his own left-hand turn. *Id.* at 00:35-0038. Although Rodirguez briefly disappears from view when he is in the intersection and Monger is negotiating his own left turn, Rodriguez quickly comes into view as the motorcycles are entering the far lane. *Id.* Given the clear beginning and ending trajectory, the court finds that Rodriguez made a wide left turn. His second factual objection is overruled.

### C. Objection 3[1]: That Trooper Monger's Belief about Members of Motorcycle Gangs Carrying Improvised Weapons Was Based on his Person Experience

In his third factual objection, Rodriguez contests whether Monger's "belief about members of motorcycle gangs carrying improvised weapons was based on [Monger's] personal experience." Docket 53 at 3. Rodriguez argues that Monger was asked on cross-examination to give details about his experience with members of motorcycle clubs and could not explain why these experiences led him to believe that club members may carry improvised weapons. *Id.*

Rodriguez, however, mischaracterizes both the Report and Recommendation's finding and Monger's testimony. The Report and Recommendation does not state that Monger's opinion about motorcycle clubs was based solely on his personal experience. *See* Docket 40 at 3, 16. Rather, the Report and Recommendation states that Monger's opinion comes from "his *training* and personal experience." *Id.* at 3 (emphasis added). This characterization comports with Monger's testimony that his opinion was informed both by his training and his personal experience. *See* Docket 39 at 50.

Monger described the type of information provided in his trainings. *See id.* at 50-51. He testified that "[t]he Outlaw Motorcycle Club Task Force" provides training before each Sturgis rally that covers "trends, what's going on

---

[1] This objection is misnumbered in Rodriguez's motion as objection 2. *See* Docket 53 at 3. For the sake of clarity, the court renumbers this objection as objection 3.

with certain clubs" and other similar information. *Id.* at 50. Monger also stated that has "stopped many motorcycle clubs throughout [his] time as a trooper." *Id.* Although Monger did not provide specific details as to each stop, or to how often he conducted a search, both parties had an opportunity to develop that testimony and failed to do so.

Because Monger's testimony is consistent and because his opinion appears to be based both on his personal experience and his training as a police officer, the court overrules Rodriguez's third factual objection.

### D. Objection 4[2]: The Facts Testified to by Trooper Monger as to Why He Believed Rodrigeuz was Fleeing

In his last factual objection, Rodriguez objects to a variety of details as to why Monger believed Rodriguez was fleeing.

#### 1. When Monger Activated his Lights

Although Rodriguez acknowledges that the Report and Recommendation "does not appear to make a finding about when Trooper Monger activated his lights," Rodriguez "asserts that the evidence contradicts Trooper Monger's testimony." Docket 53 at 3-4. Rodriguez points to Monger's testimony that Monger activated his lights as he turned onto South Ohlman. *Id.* at 4. Rodriguez then cites to the dash cam footage and argues that the drivers around Monger are not behaving as they would have if his lights had been activated. *Id.*

---

[2] This objection is misnumbered in Rodriguez's motion as objection 3. *See* Docket 53 at 3. For the sake of clarity, the court renumbers this objection as objection 4.

9

Having reviewed Monger's testimony and the dash cam footage, the court agrees with Rodriguez that the record evidence is, at best, ambiguous as to when Monger's lights were activated. The Report and Recommendation notes this ambiguity, remarking in a footnote that the video footage "does not indicate" when the lights were activated. Docket 40 at 5, n. 3. But because the Report and Recommendation does not make a factual finding and because this fact is not necessary to the court's legal analysis, Rodriguez's objection is overruled as moot.

### 2. Whether Rodriguez and his Companion Travelled Side-by-Side

Rodriguez next objects "to the extent there is a finding of fact that he and his companion were traveling side-by-side at the time Trooper Monger activated his lights." Docket 53 at 4. Rodriguez argues that his motorcycle was clearly ahead by the time the two motorcyclists were traveling on South Ohlman. *Id.* at 4-5. Having reviewed the footage, the court agrees. Rodriguez is no longer traveling side-by-side with his companion at the time that he is on South Ohlman, the earliest possible time for Monger to have activated his lights. *See* Exhibit 1 at 00:30-00:34. Thus, to the extent that the Report and Recommendation finds that Rodriguez and his companion travelled side-by-side at the time that Monger activated his lights, Rodriguez's objection is sustained. But the court notes that the motorcyclists were side-by-side prior to turning onto Ohlman. *See id.* at 00:00-00:30.

### 3. That Rodriguez Travelled at Excessive Speed after Monger Activated his Lights

Rodriguez next objects to any finding of fact that he began to travel at an excessive speed after Monger activated his lights. Docket 53 at 5. As this court has already found in analyzing Objection 1, *see supra* at 6, Rodriguez was speeding before the traffic stop. Thus, the court construes this objection as contesting the timing of Rodriguez's acceleration in relation to Monger's activation of his lights. Having reviewed the record on this matter, the court finds that the timing is ambiguous from the record evidence. Because the exact moment that Monger activates his lights is unclear, *see supra* at 9-10, whether the lights were activated before or after Rodriguez began accelerating is also unclear. Thus, to the extent that the Report and Recommendation finds that Rodiguez began to travel at excess speed only after Monger activated his lights, Rodriguez's objection is sustained.

## II. Legal Objections

Rodriguez raises two legal objections to the Report and Recommendations. Docket 53 at 6-11. First, Rodriguez objects to the Magistrate Judge's finding that Monger had reasonable suspicion or probable cause to stop the motorcycle. Docket 53 at 6. Second, Rodriguez objects to the finding that Monger had reasonable suspicion or probable cause to pat down Rodriguez. *Id.* at 6-11.

### A. The Fourth Amendment

The Fourth Amendment of the United States Constitution forbids "unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop for

a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citing *Brendlin v. California*, 551 U.S. 249, 255-59 (2007)). The Supreme Court has held that an officer may conduct an investigatory stop "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped [] of criminal activity.' " *See Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "[T]he Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016) (internal quotation omitted). Courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Adler*, 590 F.3d 581, 583 (8th Cir. 2009) (quoting *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008)).

### B. Objection I: That Monger Had Reasonable Suspicion or Probable Cause to Stop the Motorcycle

Rodriguez argues that Monger did not have reasonable suspicion or probable cause to stop his motorcycle. Rodriguez relies on his factual

12

objections 1 and 2, as well as "evidence adduced at the suppression hearing." Docket 53 at 6.

To have reasonable suspicion to stop a vehicle, a police officer must determine whether, based on the totality of the circumstances, there exists an objective and particularized basis to suspect a person of a criminal violation. *See Arvizu*, 534 U.S. at 273. So long as that basis exists, the officer may stop a vehicle, regardless of the severity of the traffic violation. *See Adler*, 590 F.3d at 583. Here, Monger personally observed Rodriguez make a wide turn in violation of SDCL § 32-26-18, turn left from the wrong lane in violation of SDCL § 32-26-18.1, and exceed the posted speed limit. *See* Exhibit 1 at 00:00-00:47. Thus, Monger had reasonable suspicion that Rodriguez had violated multiple traffic codes. Rodriguez's first legal objection is overruled.

### C. Objection II: That Monger Had Reasonable Suspicion or Probable Cause to Pat Down Rodriguez

Rodriguez's last objection concerns whether Monger had reasonable suspicion or probable cause to pat him down to search for weapons. "Officers may conduct a protective pat-down search for weapons during a valid stop . . . when they have objectively reasonable suspicion that a person with whom they are dealing might be armed and presently dangerous and criminal activity might be afoot." *United States v. Robinson*, 664 F.3d 701, 704 (8th Cir. 2011) (cleaned up). Rogdriguez argues that Monger had no reason to suspect that he might be armed and dangerous, because Rodriguez was calm and compliant. *See* Docket 53 at 6-7. Rodriguez had already admitted to the presence of one knife and argues that Monger had no reason to suspect any further weapons

13

on his person. *Id.* Although Monger testified that members of the Hells Angels motorcycle club are often armed and dangerous, Rodriguez challenges the validity of Monger's testimony. *Id.* at 7-8.

When determining whether reasonable suspicion exists to conduct a pat-down to search for weapons, the officer must consider the totality of the circumstances. *United States v. Quinn*, 812 F.3d 694, 697 (8th Cir. 2016). Here, Monger had already found one weapon on Rodriguez's person. *See* Docket 39 at 16. Additionally, Rodriguez had driven away from Monger at excessive speed. *See* Exhibit 1 at 00:30-00:47. Although Rodriguez contests whether he was fleeing, based on the footage, a reasonable officer could believe that Rodriguez was attempting to allude law enforcement, whether or not Monger had activated his lights. *See id.* (displaying evasive driving techniques, such as excess speed and weaving between cars). Furthermore, Monger was part of a motorcycle club known to carry weapons.[3] *See* Docket 39 at 51. The Eighth Circuit has previously found that law enforcement may consider motorcycle club affiliation in making the determination of reasonable suspicion in the pat-down context. *See United States v. Flett*, 806 F.2d 823, 828 (8th Cir. 1986).

Although the court acknowledges that Rodriguez was compliant and calm during the traffic stop, reasonable suspicion existed to conduct a pat-down for weapons given the totality of the circumstances. Monger had already

---

[3] Although Rodriguez contests Monger's testimony on the Hells Angels, the court has already addressed this argument in response to Objection 3, *supra* at 8-9.

noticed one weapon on Rodriguez's person and could reasonably suspect that he may have further weapons, given his affiliation with the Hells Angels and given his potentially evasive behavior. *See* Exhibit 1 at 00:30-00:47; *see also United States v. Shranklen*, 315 F.3d 959, 962 (8th Cir. 2003) ("In examining the relevant facts and inferences, we must keep in mind that 'minimally invasive weapons searches' at traffic stops will more likely be reasonable because of the 'inherent danger of traffic stops.'"). Rodriguez's second legal objection is overruled. The court finds no constitutional violation.

## CONCLUSION

Because there is no constitutional violation, the court declines to suppress any evidence gathered as a result of the traffic stop. The court adopts Magistate Judge Duffy's recommendation as modified and denies Rodriguez's motion to suppress. Thus, it is

ORDERED that the Report and Recommendation (Docket 40) denying Rodriguez's motion to suppress is adopted as modified by this opinion. The motion to suppress (Docket 33) is denied.

Dated June 14, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
